Mr. Chief Judge, and may it please the Court, Robert Sharp pled guilty to being willfully blind to possessing a controlled substance, but that guilty plea, for which the District Court sentenced him to 30 years of imprisonment, cannot stand for two independent reasons. First, Sharp provided a fair and just reason to withdraw his guilty plea because his lawyer labored under a serious conflict of interest in that the lawyer was a vital fact witness to Mr. Sharp's defense as to both knowledge and especially as to the government's willful blindness theory. Sharp can prevail on that claim even if this Court upholds the District Court's credibility and fact-finding determinations. And second, Mr. Schwartz provided ineffective assistance to counsel in that he told his client that he could be guilty of being willfully blind solely because he did not get this substance tested, regardless of what other steps he took. For those reasons, the motion to withdraw the guilty plea should have been granted and this Court should reverse. Going to the conflict of interest claim, had Mr. Sharp gone to trial, his defense would have been that he attempted to order THJ-011, which he thought was a legal substance, and his distributor, Megamulch, for which everyone that owned that company was later indicted, sent him instead Abfubinaca, which was a controlled substance. Obviously, any facts that he took steps to learn what this substance was would have negated the government's willful blindness theory. Is there anything in the record to indicate that the THJ-001 actually existed, that there was really such a thing somewhere other than in Mr. Sharp's mind? Well, so you have the letters from Mr. Sharp that he wrote to his attorney a year and a half before he pleads guilty. And then you have the government's own witness testifying at sentencing that he recognized that this is a substance. So, you have two places in the record. At least Mr. Sharp thought that this was a legitimate chemical. And the reason why this case factually is kind of strange is, normally when we think of someone going to get the advice of counsel, they know what substance they have. But here, Mr. Sharp says that he has emails telling the distributor, do not send me Abfubinaca. And he had proof showing that he paid double for this substance because he thought this was legal and told the distributors not to send him an illegal product. Counsel could have testified about this at trial. This would have gone to willful blindness especially. If Mr. Sharp hires a lawyer and goes to him to determine whether these chemicals are illegal or legal, that would have shown that he was not deliberately remaining ignorant. And that's true regardless of whether you accept Mr. Schwartz's testimony during the motion to withdraw the guilty plea. There was evidence in the record that this was the second chemical that Mr. Sharp went to Mr. Schwartz to inquire about. The first was Abfubinaca. And Mr. Sharp told Mr. Schwartz, why didn't you tell me that this had recently been classified as an analog? Because I just found out from my distributor. Mr. Schwartz looked at that and told him, yes, that's been classified. You need to get rid of that. And Mr. Sharp listened to that advice and got rid of that chemical prior to the scheduling taking place. And that was corroborated by Wayne Watkins at the sentencing hearing. So then with the second chemical, Mr. Sharp goes to Mr. Schwartz and says, is this a controlled substance or an analog thereof? Mr. Schwartz says that he could not determine one way or the other. And his advice was, you need to get out of this entirely. And that would have been wise advice for Mr. Sharp to take, obviously. But it doesn't undermine the fact that the counsel told Mr. Sharp, I don't think this is a controlled substance, or I don't know this is a controlled substance, and I don't know if it's an analog thereof. And so he could have been a vital fact witness to rebut the government's proof of willful blindness here. How would that rebut it? I thought the district court credited Mr. Schwartz as having said, look, these things either are or are going to shortly be all listed. Just get out of the business. Get rid of all these things. How does the confusion over THJ and all that, I mean, once he said, look, these either are or are going to be, at that point if he continues to sell them, isn't he sticking his head in the sand? Well, no, not because, if that's followed, that advice was coming on the heels of the I don't know if this is a controlled substance, and I don't know if this is an analog thereof. Well, did he check other sources other than his lawyer? What other efforts? Well, he had lab reports. Could show any other efforts to indicate, to discover what he was actually selling? He had lab reports. He hired a lawyer. I know the lawyer said on testimony that he was not hired for this purpose, but you saw the time records where the first three entries said that he was advising Mr. Sharpe on synthetic chemicals and whether or not they were legal or illegal. The big question is, was it willful blindness simply because Mr. Sharpe did not get these chemicals tested? And I think that is an error as a matter of law. The attorney was wrong to tell Mr. Sharpe that advice. And the reason is, there's no proof in the record that testing is even available. I think you'd be hard-pressed to find a lab technician to say, please, go test this substance, determine whether simple possession of this is illegal or legal, and get a lab technician to actually do that. Because the minute they realize that this is an illegal substance. He wouldn't need to have the lab give him a legal opinion, he'd just need to tell them what the chemical substance is. And then he can, with that identification, try to find out if it's been scheduled. But once the lab technician learns that it is a controlled substance or an analog thereof, the lab technician is guilty of possession, even if there is no intent to distribute under federal law. And so I don't know that the testing is even available here. I think you're right. He really should have taken his lawyer's advice and got out of this business, because it seems like you have to know, going in, when you're dealing with these things, that you've got to know what you're dealing with, and if you don't, you should probably leave it alone. And I agree, but that's not the advice that he necessarily needed to show that he was innocent of this offense, Judge. Show that he was willfully blind. He had to take no steps. He had to do nothing to try and find out what this substance was. This defendant took as many steps as one could possibly take. Now, did he listen to the ultimate advice about you should get out because this may become illegal in the future? No, but that doesn't matter as to whether or not this substance was illegal when he possessed it. We are not relying on an advice of counsel defense here. It was enough that the lawyer would have been a fact witness under Iowa professional rules. Once the lawyer realized he would have been a fact witness, he had a duty to get out of this case. There's no question that the lawyer knew knowledge and willful blindness was going to be the primary defense at trial. You have the letters from the defendant to the lawyer a year, 18 months before the decision to plead guilty, where he is directly saying, I did not have knowledge of this. I ordered one chemical, and I was given another chemical. And he would have had a great defense had he been able to call the distributor, get those people on the stand to say, hey, we sent him something that he did not order, especially if he had emails documenting all of this. And the lawyer would have been a great fact witness to rebut any sort of willful blindness theory because you can't be willfully blind if you're taking active steps to find out what the chemical is. And I tell you that as a matter of law, finding defendants guilty simply because they did not get the substance tested creates a lot of great danger for people that are in the herbal supplement industry. And I realize that that may seem like a small industry, but I happened to use a Google search this morning, and there are over 250 stores in this city that sell K2 or Spice. And to tell them, if you don't get every chemical that may have some sort of pharmacological effect, if you do not get that tested, when there's no proof that testing even exists, you're then subject to 20 or 30 years of imprisonment, creates a really high barrier and is not consistent with this court's cases on willful blindness. This court's cases and the Supreme Court's cases say that you must try to take steps to remain deliberately ignorant, and here Mr. Sharp did not do that. Did he take the ultimate advice about get out of the industry? No, but that shouldn't have mattered as to whether or not he knew this substance at that particular time was violating the law by possessing it. You have lots of proof here of other ineffectiveness from the fact that he told him that he could be found guilty simply by not testing this evidence. You have also proof that once he knew he was a fact witness under the Iowa rules of professional conduct, he needed to withdraw. The attorney also had, I mean, how many countless conversations on recorded phone lines with very detailed attorney-client privilege information? And I didn't even put in the brief the fact that the biggest conflict of interest in this case was that Mr. Schwartz was representing Bob Sharp, Sheree Mohamed, and Hari Sharari, all of who were cooperating against each other at the same time or at one point in time. We didn't raise that claim because it wasn't pressed below, but if you see the case citation in the brief to another district court case in this district that chides Mr. Schwartz and his law firm for doing the same thing in another case, the only reason we weren't able to present that on appeal is because it was not pressed below. So there is a lot of evidence of ineffective assistance of counsel here, and there's a lot of evidence of a conflict, that once the lawyer knew I'm a fact witness, I needed to get out of this case, and the lawyer had a lot of great reasons to continue on in the case. You saw the billing records. Have you brought a separate ineffective assistance claim in this appeal, or is it simply tied to the plea withdrawal? I think both the plea withdrawal, we're asking for, based on a conflict of interest and ineffective assistance of counsel, that those were fair and just reasons why this guilty plea had to be thrown out. I don't think you have to get into the credibility determinations or the district court's factual determinations. We obviously challenge those, but I don't think you need to get into that to find that there was a conflict of interest here. Let me try to make that a little more clear. You're not raising an ineffective assistance of counsel claim in this appeal, are you? No. We're raising it under the guise as a fair and just reason to withdraw the guilty plea. We are not raising a separate ineffective assistance of counsel claim by itself, because I realize that the courts on direct appeal generally do not like to take on those sorts of claims without an adequate record. Here you have plenty of adequate record to determine whether or not the counsel provided ineffective advice to Mr. Sharpe, and that Mr. Sharpe could be guilty of being willfully blind to possessing a controlled substance, simply because he did not get the substance tested and despite all of the other actions that Mr. Sharpe took in this case. I see I'm running short on time, so I'll reserve the rest of it for rebuttal. Thank you. Mr. Chatham? Thank you, Your Honor. May it please the court. This case involves a defendant who walked into court on the morning of trial, pled guilty, admitted all the facts, all of the elements of the offense, including the knowledge element under a willful blindness theory. And then a few months later after he receives a pre-sentence report that has a higher range than he initially anticipated or that his lawyer had predicted, hires a new attorney and files... How long was it before the PSR came out? I believe he pled guilty in either September or early October, and the pre-sentence report was out within two to three months, and the motion to withdraw a guilty plea was filed in January. So I believe we already had at least a draft, if not a final pre-sentence report, before we hit the motion to withdraw a guilty plea. So... When you say he admitted the knowledge element, you expect a deliberate ignorance, right? Yes. And all he said was, by avoiding testing, right? He answered yes, and then he added on the fact that, well, I didn't get them tested, yes. That's sufficient? It is, Your Honor. The answer yes is sufficient. Okay, but if it's yes by or yes because I didn't test, is that alone sufficient? I believe it is, Your Honor, and under the circumstances, and here we're talking about the defendant's burden to show that there was a fair and just reason to withdraw the plea. And so I think the court is entitled to rely on the regularity of his yes, saying, yes, I was willfully blind, or yes, I was deliberately ignorant, and certainly the fact of not testing the products was a significant factor in his willful blindness. That was the fact that showed that, hey, I knew I had an opportunity and a mechanism potentially to find out what these substances were, but I didn't take it. I avoided that, and I avoided getting actual knowledge. So... Mr. Hopwood, correct that if a chemist did the test and found out it was illegal, that they themselves were subjecting themselves to potential criminal prosecution? I think that would be a very unusual situation, and I would liken it to someone on the street who picks up a baggie and doesn't really know what it is and then realizes, oh, this is crack or whatever it might be. They could turn it over to the police, and they're probably not going to be prosecuted for it. It requires knowing possession. So if it turns out that's the situation, I suspect that that's why labs wouldn't test the substances because they don't want to be in those situations or be perceived as attempting to assist individuals who are illicitly selling these products, but under a technical reading, potentially, but that's certainly not what we have in this case. You have to be knowingly in possession of that substance. I think you just sort of made the point that causes me a little bit of trouble, is that there's no basis to think that they could have been tested. I think you just said a lab is probably not going to be doing this for you. In our record, yes, the record in our case is that Mr. Schwartz had attempted to contact labs to see if anyone would do it, and he said no, they couldn't. But that, again, goes to the willful blindness. This argument, defense argument, sort of flips everything on its head. It sort of starts with the presumption that, yes, I can sell all these things. I can sell these drugs in mislabeled packages that say not for human consumption, even though I know that they're for human consumption, and I can keep doing this as long as I don't know exactly what's in there. And that's just not what's required. He had plenty of information. He's discussing chemical names, including AB Fubanaca in those emails at a prior time. He's discussing chemical names with his suppliers. He's going through this. He's proceeding on selling these substances in their mislabeled packages, despite realizing that these substances had a very high chance that they contained either controlled substances or analog substances, and he did not take affirmative steps, or actually took affirmative steps to avoid learning what the substance actually was. He's effectively relying on the advice of my drug dealer defense here. Well, because this mega-mulch told me this, this is what I believe it was. When he knows that he's dealing with somebody who supposedly is putting out, you know, charging him double for this THJ-011, and I will note, he mentioned the evidence in the record that this THJ-011 existed. The only thing in the record, other than the defendant's own protestations, his emails and things like that, that THJ-011 exists, was a single question, confused answer, I imagine, where initially Dr. Fang started talking about THJ-011, but he was confused. He thought it was THJ-2201, which is an analog that was also found in this case, and was relevant conduct. So he had looked at that substance for purposes of the sentencing, and as I mentioned in the brief, Dr. Fang is not a native English speaker, which isn't necessarily apparent from the record, but obviously the district court was aware of that. And then he was asked a question of, well, no, I'm talking about THJ-011, and he said, well, I think I've heard of that, or I've heard of that, but I haven't reviewed anything like that for this case. There's no basis in the record, there's no follow-up, there's no presentation which one would expect that someone from Mr. Sharp's position, if he's claiming, no, it was this legal substance that's not a controlled substance, that's not an analog, that he would have provided some sort of affirmative evidence that this substance actually exists, and he never did that. The best he could come up with was a cross-examination question where a DEA pharmacologist said, well, I've heard of that. There's no context of how he heard of it. It could have been walking into court, hey, have you ever heard of this THJ-011? I don't know, but that could have been the situation. That record really isn't developed, and there's no affirmative evidence that THJ-011 actually exists. As opposed to being just a ruse created by the defendant, I think it's important to note that this entire industry, this synthetic drug, K2 spice industry, operates on deception. The base model that was employed by the defendant was to package these substances in a package that said not for human consumption, does not contain a list of various chemicals that are controlled substances. But that entire purpose of including the not for human consumption on there is a nod to the fact of an analog act. They put doesn't contain substances that are actually controlled on the packaging, and then they put not for human consumption because they realized that the analog act exists, and so they're trying to set in a legal defense at the start. And interestingly, this defendant knew that more than even the run-of-the-mill shop owner might have, because this defendant was packaging the substances himself. He bought the packages separately and had a manufacturing operation in Wayne Watkins' basement where they were combining the chemicals with the plant material and putting it into these packages, the same substances into different packages in different labels on them, or different brand names, so to speak, gods of aroma, darkness, different things like that. They were putting the same things in different packages. So the entire operation is based on deception. So the fact that the district court discounted the defendant's testimony, discounted the notion that THJ-011 exists or that the defendant truly believed that it was this substance, I think that's well-supported in the record. Was there a written factual basis for the plea? It was not in writing, Your Honor. Oral? Just oral. We were set for trial on a Monday morning, and on a Sunday afternoon, we received word that the defendant was going to plead, and he came and pled straight up while the jury was convening in another room. Under McFadden, shouldn't the magistrate have asked Sharp whether he believed there was a high probability that the substances were controlled substances or analogs? The specific question asked was whether it was subject to regulation under federal drug laws. My question, is that good enough under McFadden? I believe it is, Your Honor, yes. And so McFadden specifically rejected the claim that the government made in that case, which was more of a general illegality claim, well, if it's illegal under some law. And that's not what was posed to the defendant here. It was specifically posed under a federal drug law, that it was regulated by federal drug laws. And I think when you add on, in this case, the fact that the defendant was packaging his materials in packages that said, not for human consumption, that sort of combined shows what the defendant's answer there means, which is, yes, I believed that there was a high probability that the substances I was distributing were regulated by the Controlled Substances Analog Act. And that's sufficient under McFadden. I understand McFadden is an analog case, and this was not prosecuted directly under the analog act. But under McFadden, the mens rea for analogs is effectively the same for controlled substances, meaning that if an individual believes that they possess a controlled substance analog, and it turns out it ends up being a controlled substance, they still have the sufficient mens rea for a violation of 841A1. They believe that they possess a substance that is regulated under the Controlled Substances Act. And as the majority in McFadden said, the Controlled Substances Analog Act just extends that umbrella of the Controlled Substances Act to analogs. What exactly was the controlled substance he was charged with in this case? He was charged with AB Fubanaca, which was a Schedule I controlled substance as of February of 2014. So, he's charged as a Schedule I, and his admission, we believe, of knowledge that it would be that the substances were regulated by federal drug laws was sufficient, particularly in hindsight now when we're looking at whether there's a fair and just reason to withdraw the plea, that that admission, plus the other facts that we know in the case, that that's what he was admitting. Is that, yeah, I believe there's a high probability I was dealing with analogs, but I consciously avoided learning that fact. On this issue of counsel, Mr. Schwartz, and this issue of willful blindness, we've covered it in the brief, but Mr. Schwartz didn't have a conflict, the one that was raised, certainly at the district court, and now here, although today Mr. Hopwood has indicated this other potential conflict, which I don't think the court can consider, certainly doesn't have enough facts, and there's certainly no facts in the record to consider whether there was some sort of impermissible conflict with those other individuals, Mr. Mohamed El-Sharari or Mr. Hadi Sharari. But the fact of the matter is, is that a willful blindness defense, had the defendant put it on, with the facts that we now know that are in the record from the motion to withdraw a guilty plea, his willful blindness, the willful blindness theory would have been even more founded at trial. What we would have then put on would have been, or he would have been putting on his lawyer to come testify, he asked me about these substances, whether they were controlled or analogs, I told him, I can't tell you, but you shouldn't do it. And he promptly ignored all of that advice, because that is the advice, the advice is you should not do this, I can't, I don't have enough information to tell you whether it's a controlled substance analog or not, but you shouldn't be doing it. That right there would have just, it would have walked the jury to a willful blindness finding on the case. So, the idea that, that that testimony was otherwise relevant to the willful blindness theory in a good way for the defendant just doesn't make any sense in this case. Looking through my notes, I don't think I have anything else, if there are no other court, in all respects, thank you. Mr. Hopwood? Yeah, just a few quick points, again, Mr. Sharp wasn't charged with whether or not he made a bad decision to stay in the synthetic cannabinoid industry, and so that advice from counsel doesn't get to the key issue as to whether THJ-011 was a controlled substance or an analog thereof. My opponent talks a lot about the substances being mislabeled, that is an FDA offense that carries a much smaller range of punishment than knowingly or willfully, being willfully blind possessing a controlled substance or analog, and Judge Gruner, you asked a great question about, under McFadden, was it enough for him to say that this was regulated under some drug law? That exact argument was rejected by the court in McFadden, where it said, it's not enough for the government to show that the substance was, quote, regulated by any law. Well, there's a degree of difference, right? Yeah, he said it was regulated under some federal drug law, and it could have been under this FDA misbranding not for human consumption law, which, on the whole, I'm sure he would have rather pled guilty to that than this. I want to briefly get into, quickly, the special factors that the court decided. The court said that because he knew there was a disorientation effect, that was enough to show he was guilty. That's not what he said at page 13 of the guilty plea. He said, when you say hi, the effects that came from them weren't like a euphoric hi, they weren't like a marijuana hi. It would cause a disorientation. And then, the special factor as to the timing of this. He pleads guilty in October. He starts contacting lawyers in November. The PSR comes out in December. New counsel enters an appearance December 31st. Schwartz withdraws January 21st, and the motion to file the guilty plea withdrawal was filed the next day. Mr. Sharp was in county jail trying to get another lawyer to file, review the file, and file the motion, and that takes time. For these reasons, we ask the court to reverse the district court's judgment. Thank you. Thank you, Mr. Hopwood. Thank you also, Mr. Chatham.